GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas (SBN 106409)
  *jthomas@gibsondunn.com*
Spencer Ririe (SBN 248277)
  *sririe @gibsondunn.com*
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:  213-229-7000
Facsimile:   213-229-7520

WOLF, GREENFIELD & SACKS, P.C.
Michael N. Rader (admitted *pro hac vice*)
  *mrader@wolfgreenfield.com*
Charles T. Steenburg (admitted *pro hac vice*)
  *csteenburg@wolfgreenfield.com*
Stuart V. C. Duncan Smith (admitted *pro hac vice*)
  *sduncansmith@wolfgreenfield.com*
600 Atlantic Avenue
Boston, MA 02210-2206
Telephone:  617-646-8000
Facsimile:   617-646-8646

*Attorneys for Defendant Sony Electronics Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXUS DISPLAY TECHNOLOGIES, LLC, | Case No. 2:14-05693 JVS (DFMx) |
| Plaintiff, | Honorable James V. Selna |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SONY'S MOTION TO DISQUALIFY COUNSEL AND MANDATE AN ETHICAL SCREEN** |
| SONY ELECTRONICS INC., | |
| Defendant. | |
| SONY ELECTRONICS INC., | Date:  December 15, 2014 |
| Counter-complainant, | Time: 1:30 p.m. |
| v. | Courtroom:  10C |
| NEXUS DISPLAY TECHNOLOGIES, LLC, | Judge:  Honorable James V. Selna |
| Counter-defendant. | |

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

## <u>TABLE OF CONTENTS</u>

I.   BACKGROUND ...................................................................................2

   A.  Mr. Siegel's Fifteen Years of Experience Defending SEL and Other
       Sony Companies in Patent Infringement Cases .............................2

       1.  Mr. Siegel's Role in Managing Patent Cases and Interfacing
           With Key Decision Makers ....................................................3

       2.  Mr. Siegel's Defense of SEL Against Compound Photonics ..............3

   B.  Mr. Siegel's Departure for Acacia .............................................4

       1.  Acacia's Business Model .......................................................5

       2.  Mr. Siegel's Previous Experience Defending Sony Against
           Acacia Claims ....................................................................5

   C.  Mr. Siegel's Involvement in Nexus's Suit Against SEL............................6

II.  ARGUMENT .......................................................................................7

   A.  Mr. Siegel is Barred From Prosecuting Nexus's Claim Against SEL
       Given the Material Information That He Gained When Defending
       SEL in Substantially Similar Cases. ...........................................8

       1.  Nexus's Claims Against SEL Are Substantially Related to
           Compound Photonics' Claims Against SEL Given the
           Overlapping Witnesses and Product Categories. ................................11

       2.  Nexus's Claims Against SEL Are Also Substantially Related to
           Numerous Other Patent Cases That Mr. Siegel Handled For
           SEL Given Mr. Siegel's Key Role in Formulating Infringement
           Defense Strategies. ...............................................................14

   B.  California Law Requires Imputing Mr. Siegel's Conflict to His
       Colleagues at Acacia Along With Outside Counsel For Nexus.................16

   C.  SEL's Requested Relief Would Not Preclude Nexus From
       Maintaining the Case Using New Outside Counsel Provided That
       an Ethical Screen is Established. ...............................................18

   D.  Numerous Other Law Firms Are Already Representing Acacia
       Subsidiaries and Could Replace Current Outside Counsel. .......................21

III. CONCLUSION.....................................................................................21

1

# **TABLE OF AUTHORITIES**

2

3

# **CASES**

4  Adams v. Aerojet-Gen. Corp.,
5     104 Cal. Rptr. 2d 116 (Cal. App. 2001) ...................................................16

   Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.,
6     913 F. Supp. 2d 900 (C.D. Cal. 2012)................................................. passim

7  Andric v. California,
      55 F. Supp. 2d 1056 (C.D. Cal. 1999)...................................................17
8
   Beltran v. Avon Products, Inc.,
9     867 F. Supp. 2d 1068 (C.D. Cal. 2012)...................................... 8, 15, 18

10 Brand v. 20th Century Ins. Co.,
      21 Cal. Rptr.3d 380 (Cal. App. 2004) ..................................................9, 16
11
   City & County of San Francisco v. Cobra Solutions, Inc.,
12    135 P.3d 20 (Cal. 2006)........................................................... 11, 17, 18

13 City Nat'l Bank v. Adams,
      117 Cal. Rptr. 2d 125 (Cal. App. 2002) ................................................12
14
   Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.,
15    809 F. Supp. 1383 (N.D. Cal. 1992).........................................................9

16 Farris v. Fireman's Fund Ins. Co.,
      14 Cal. Rptr.3d 618 (Cal. App. 2004) ........................................ 9, 11, 16
17
   Fiduciary Trust Int'l of Cal. v. Superior Court,
18    160 Cal. Rptr. 3d 216 (Cal. App. 2013) ..................................................9

19 Flatt v. Superior Court,
      885 P.2d 950 (Cal. 1994).......................................................................9, 16
20
   Hutchinson v. City of Garden Grove,
21    No. 8:07-cv-00527 (C.D. Cal. Dec. 17, 2007) .....................................17

22 In re County of Los Angeles,
      223 F.3d 990 (9th Cir. 2000)......................................................................8
23
   Jessen v. Hartford Cas. Ins. Co.,
24    3 Cal. Rptr. 3d 877 (2003)....................................................................9, 10

25 Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,
      81 Cal. Rptr. 2d 425 (Cal. App. 1999) ............................................. 10, 11
26
   Pound v. DeMera DeMera Cameron,
27    36 Cal. Rptr. 3d 922 (Cal. App. 2005) ...................................................18

28

<u>Sony Elecs., Inc. v. Soundview Techs., Inc.</u>,
  225 F. Supp. 2d 164 (D. Conn. 2002) ................................................5

<u>State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.</u>,
  86 Cal. Rptr. 2d 20 (Cal. App. 1999) .........................................8, 12

<u>Summit Data Sys., LLC v. EMC Corp.</u>,
  2014 WL 4955689 (D. Del. Sept. 25, 2014) ...................................5

<u>Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.</u>,
  2012 WL 601811 (N.D. Cal. Feb. 23, 2012)................................ 10, 14

<u>Virnetx, Inc. v. Cisco Sys., Inc.</u>,
  767 F.3d 1308 (Fed. Cir. 2014) .....................................................13

## **<u>STATUTES</u>**

35 U.S.C. § 284 ................................................................................13

## **<u>RULES</u>**

California Rule of Professional Conduct 3-310(E) ......................... passim

L.R. 83-3.1.2 ..................................................................................8

---

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1         Disqualifying counsel for Plaintiff Nexus Display Technologies LLC

2   ("Nexus") and mandating an ethical screen between any subsequent counsel and

3   Jaime Siegel—Executive Vice President of Licensing and Litigation for Nexus's

4   parent Acacia Research Corporation ("Acacia")—is necessary to protect Defendant

5   Sony Electronics Inc. ("SEL") from prejudice and prevent Mr. Siegel from

6   breaching (even if inadvertently) the ongoing duty of confidentiality that he owes

7   to SEL after defending his former client SEL in many patent infringement suits.

8         Mr. Siegel spent fifteen years handling dozens of patent cases for SEL while

9   employed as a senior in-house counsel at SEL's parent Sony Corporation of

10  America ("SCA"). ███████████████████████████

11  ██████████████████████████████████████

12  ██████████████████████████████████████

13  ███████████████████████████████████████

14  ██████████████████████████████████████

15  ████████████████████

16        In particular, Mr. Siegel defended SEL against non-practicing entities such

17  as Nexus.  He acknowledges his "long" history at Sony being "on the other side of

18  Acacia" itself.  (Declaration of Charles T. Steenburg ("Steenburg Decl.") Ex. 1).

19  ████████████████████████████████████

20  ████████████████████████████████████████

21  ███████████████████████████████████

22  ███████████████████████████████████

23  ████████████████████████████████████

24        California Rule of Professional Conduct 3-310(E) therefore bars Mr. Siegel

25  from representing Nexus against SEL because he possesses material confidential

26  information that would unfairly prejudice Mr. Siegel's former client SEL.  There is

27  an irrefutable presumption to this effect given the substantial similarity between

28  Nexus's claims and the numerous patent cases in which Mr. Siegel defended SEL.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1   ████████████████████████████████████

2   ████████████████████████████████████

3   ████████████████████████████████████

4   ████████████████████████████████████

5   ██████████████████████  In other words, Mr. Siegel will remain

6   positioned to exploit his inside information to Sony's detriment unless the Court

7   orders otherwise.

8          Logic and governing law likewise require imputing Mr. Siegel's conflict to

9   Nexus's current outside counsel, Ahmad, Zavitsanos, Anaipakos, Alavi, Mensing

10  P.C. ("AZA").  Without such vicarious disqualification, Sony would unfairly be

11  left to wonder what Mr. Siegel (or others at Acacia with whom he has discussed

12  Nexus's case against SEL) may have disclosed to AZA concerning Mr. Siegel's

13  extensive experience defending SEL in patent cases and working with many of the

14  same people who are potential witnesses and/or decision makers in the present suit.

15  **I.      BACKGROUND**

16         **A.      Mr. Siegel's Fifteen Years of Experience Defending SEL**

17                 <u>**and Other Sony Companies in Patent Infringement Cases**</u>

18         During his fifteen years at Sony, Mr. Siegel managed dozens of cases in

19  which patentees alleged that SEL infringed their patents. ████████████████

20  ████████████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ██████████████████████████████████

24  ████████████████████████████████████

25  ████████████████████████████████████

26  ████████████████████████████████████

27  ████████████████████████████████████

28  ██████████████████

2

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1. **Mr. Siegel's Role in Managing Patent Cases and**
   **Interfacing With Key Decision Makers**



2. **Mr. Siegel's Defense of SEL Against Compound Photonics**

Mr. Siegel played a central role defending SEL in an International Trade Commission (ITC) investigation and parallel district court litigation initiated against SEL and other Sony entities by Compound Photonics, Ltd. ▮▮▮

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1    Compound Photonics asserted that Sony's "SXRD" projectors infringed a

2    patent owned by Compound Photonics. 

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    **B.    Mr. Siegel's Departure for Acacia**

19    In June 2013, while Compound Photonics' district court case against SEL

20    was still pending, Mr. Siegel left Sony and joined Acacia as Senior Vice President.

21    In announcing Mr. Siegel's move, Acacia touted his fifteen years of experience

22    "managing intellectual property issues at Sony."  (Steenburg Decl. Ex. 2, p. 2).

23    Acacia's CEO commented that this experience made Mr. Siegel "a great addition

24    to Acacia's management team."  (Id.).

25    Later, in May 2014, Mr. Siegel was appointed Acacia's Executive Vice

26    President of Licensing and Litigation.  (Steenburg Decl. Ex. 3).  He remains in that

27    position today.  (Steenburg Decl. Ex. 1 & 3).

28

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

### 1.   <u>Acacia's Business Model</u>

Acacia is "in the business of patent licensing," <u>Summit Data Sys., LLC v.</u> <u>EMC Corp.</u>, 2014 WL 4955689, at *4 (D. Del. Sept. 25, 2014), and bills itself as "the industry leader" (Steenburg Decl. Ex. 4).  To date in 2014, Acacia has reaped over $99 million in revenue (Steenburg Decl. Ex. 5, p. 2) from over thirty different "licensing and enforcement programs" (<u>id.</u>, pp. 15-16).  Over  a dozen such Acacia subsidiaries entered into licensing agreements in the most recent quarter alone. (Steenburg Decl. Ex. 6, p. 15).  Acacia concedes that such subsidiaries handle **<u>all</u>** "licensing and enforcement activities."  (Steenburg Decl. Ex. 5, p. 5).

Indeed, Acacia subsidiaries are prosecuting dozens of patent infringement suits across the country.  (Steenburg Decl. ¶¶ 13, 15, 17, 19, 21 & Ex. 7, p. 21-22). According to a recent presentation by Mr. Siegel himself, Acacia has a "healthy" pipeline, with trials "ramping up throughout 2015."  (Steenburg Decl. Ex. 7, pp. 12, 21, 62).  Numerous different law firms represent the Acacia subsidiaries in these cases.  (Steenburg Decl. ¶¶ 13, 15, 17, 19, 21).

### 2.   **Mr. Siegel's Previous Experience** **<u>Defending Sony Against Acacia Claims</u>**

While still at Sony, Mr. Siegel himself defended SEL against an Acacia subsidiary alleging that Sony televisions infringed a patent covering the "v-chip" parental control device.  He entered an appearance in the litigation and ultimately secured summary judgment that Sony's televisions did not infringe.  <u>Sony Elecs.,</u> <u>Inc. v. Soundview Techs., Inc.</u>, 225 F. Supp. 2d 164 (D. Conn. 2002) (noting Mr. Siegel's appearance).  Sony also recovered certain attorney's fees from the Acacia subsidiary.  2005 WL 1661696 (D. Conn. July 13, 2005).

In a recent interview, Mr. Siegel recounted this experience "leading the defense killing Acacia's first patent on the v-chip."  (Steenburg Decl. Ex. 1, p. 9).

███████████████████████████████████████████████

███████████████████████████████████████████

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

### C.    <u>Mr. Siegel's Involvement in Nexus's Suit Against SEL</u>

On June 12, 2014, shortly after Mr. Siegel became Acacia's Executive Vice President of Licensing and Litigation, Acacia formed Nexus and listed itself (i.e., Acacia) as the "governing person." (Steenburg Decl. Ex. 8). Four days later (Steenburg Decl. Ex. 36, pp. 8-15), Acacia assigned to Nexus the patents that Nexus now asserts cover Sony's SXRD projectors, which Mr. Siegel had been defending on behalf of SEL in the Compound Photonics case until Mr. Siegel left Sony in 2013.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1    Two weeks later, on July 17, 2014, Nexus (represented by AZA) filed this

2   lawsuit against SEL.  The complaint alleged that SEL infringed Nexus's patents by

3   making, using, and selling "the Sony TriMaster series of monitors, Sony radiology

4   displays, and Sony SXRD projectors."  (D.I. 1 ¶¶ 6, 10 & 14).

5    ███████████████████████████████████████████████

6   ██████████████████████████████████████████████████

7   ██████████████████████████████████████████

8   ██████████████████████████

9    Most recently, Mr. Siegel himself updated investors on Acacia's "revenue

10  pipeline" and touted Acacia's portfolio of "Silicon Image" patents.  (Steenburg

11  Decl. Ex. 7).  Silicon Image was the original owner of Nexus's patents.  (Ex. 9).

12  **II.    ARGUMENT**

13   Given Mr. Siegel's fifteen years of experience (until last year) defending

14  SEL from charges of patent infringement, he cannot now switch sides and oversee

15  Nexus's patent infringement claims, which concern an SEL product line that Mr.

16  Siegel was defending until the very day he left Sony.  Nexus would have an unfair

17  advantage given ████████████████████████████████████████

18  ████████████████████████████████████████████

19  ██████████████████████ Indeed, Mr. Siegel ███████████████████

20  ████████████████ and even now acknowledges his "long" history of being

21  "on the other side of Acacia."  (Steenburg Decl. Ex. 1, p. 9).

22   The prejudice would be particularly profound given that Nexus is targeting

23  Sony's SXRD projectors.  This is the same product family accused of infringement

24  in the Compound Photonics case, which Mr. Siegel was defending last year when

25  he left Sony and joined Acacia.  Indeed, in the course of representing SEL, Mr.

26  Siegel ██████████████████████████████████████

27  ████████████████████████████████████████████

28  ██████████████████████████████████████████████

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

Nor can Mr. Siegel leverage such experience via proxy.  The governing California ethical rules[1] require disqualifying Nexus's current outside counsel. Allowing them to continue representing Nexus against SEL would undermine the "public trust both in the scrupulous administration of justice and in the integrity of the bar."  State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co., 86 Cal. Rptr. 2d 20, 24 (Cal. App. 1999) (reversing trial court and ordering disqualification).  Upholding this trust is the "paramount concern" that California courts consider when deciding disqualification motions.  Id.  It overrides Nexus's interest in retaining its current counsel, particularly given the stable of other firms currently representing various other wholly-owned Acacia subsidiaries.

### A.    Mr. Siegel is Barred From Prosecuting Nexus's Claim Against SEL Given the Material Information That He Gained When Defending SEL in Substantially Similar Cases.

California Rule of Professional Conduct 3-310(E) bars Mr. Siegel from representing Nexus in the instant case against SEL because he possesses material confidential information that would unfairly prejudice SEL and benefit Nexus.[2]

---

[1] Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp., 913 F. Supp. 2d 900 (C.D. Cal. 2012) (applying California state law and disqualifying counsel in patent infringement matter, citing In re County of Los Angeles, 223 F.3d 990 (9th Cir. 2000)); L.R. 83-3.1.2 (adopting "the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto").

[2] While Mr. Siegel is not admitted to the California bar, Section  II.B below explains why his conflict extends to Nexus's outside counsel, who currently have unfettered access to Mr. Siegel in his capacity as Executive Vice President of Licensing and Litigation for Nexus's parent Acacia.  See Beltran v. Avon Prods., Inc., 867 F. Supp. 2d 1068, 1072 (C.D. Cal. 2012) (disqualifying two firms based on conflict originating with attorney not on relevant "litigation team").

8

Mr. Siegel had access to such information because Nexus's claims against SEL are substantially related to previous patent infringement cases that Mr. Siegel defended on behalf of SEL and other Sony companies.  <u>Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.</u>, 913 F. Supp. 2d 900, 907 (C.D. Cal. 2012) (disqualifying counsel in patent infringement case).

Indeed, given that Mr. Siegel directly represented SEL in cases substantially related to the present dispute, his access to material information "must be presumed." <u>Jessen v. Hartford  Cas. Ins. Co.</u>, 3 Cal. Rptr. 3d 877, 885 (2003). Inquiries into whether Mr. Siegel actually possesses material confidential information are "not permitted." <u>Fiduciary Trust Int'l of  Cal. v. Superior Court</u>, 160 Cal. Rptr. 3d 216, 227 (Cal. App. 2013) (reversing trial court and ordering disqualification); <u>see also</u> <u>Brand v. 20th Century Ins. Co.</u>, 21 Cal. Rptr.3d 380, 387 (Cal. App. 2004) (reversing trial court and ordering disqualification, notwithstanding attorney's "professed failure to recall any confidential information"); <u>Farris v. Fireman's Fund Ins. Co.</u>, 14 Cal. Rptr.3d 618, 624 & n.7 (Cal. App. 2004) (reversing trial court and ordering disqualification, emphasizing the "impropriety of any inquiry into, or evidence about, the 'actual state of the lawyer's knowledge'").  This irrefutable presumption is necessary to avoid "swearing matches" and protect former clients such as Sony from having to disclose confidential information.  <u>Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.</u>, 809 F. Supp. 1383, 1392 (N.D. Cal. 1992) (granting motion to disqualify and explaining that the irrefutable presumption is "grounded in common sense and the need to protect the fiduciary nature of the attorney-client relationship"). The "substantial relationship" necessary to implicate Rule 3-310(E) and disqualify counsel exists whenever the "subjects" of the two cases "are linked in some rational manner."  <u>Jessen</u>, 3 Cal. Rptr. 3d at 886 (citing <u>Flatt v. Superior Court</u>, 885 P.2d 950 (Cal. 1994)).  Relevant considerations include:

9

- "the similarities between the two factual situations";
- "the legal questions posed"; and
- "the nature and extent of the attorney's involvement with the cases," including an assessment of "the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy."

Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 81 Cal. Rptr. 2d 425, 432 (Cal. App. 1999) (affirming preliminary injunction barring representation).

Ultimately, however, determining whether two matters are substantially related requires looking beyond the "strict facts, claims, and issues involved in" the earlier matter and instead recognizing the "myriad of considerations" that can influence a client's course of action when defending the subsequent case. Jessen, 3 Cal. Rptr. 3d at 886-87 (citing example of "the client's internal operations or policies"). Such considerations include the former client's "financial strength" and "settlement strategy." Advanced Messaging Techs., 913 F. Supp. 2d at 908 n.6 (explaining necessity of "rational link" test as opposed to a more stringent standard). Confidential information can also include "the identity of key decision makers, litigation philosophy, and organizational structure of the former client." Talon Research, LLC v. Toshiba Am. Elec. Components, Inc., 2012 WL 601811, at *4 (N.D. Cal. Feb. 23, 2012) (granting motion to disqualify plaintiff's counsel).

Under California's approach, Nexus's patent infringement claims against SEL are substantially related to previous patent infringement cases in which Mr. Siegel defended SEL. For one, the accused products overlap with those in Compound Photonics, which Mr. Siegel was handling when he left Sony. E.g., Talon, 2012 WL 601811, at *6 (citing "overlap of the products accused" in current case and previous cases in which the lawyers being disqualified had represented Toshiba). In defending SEL's SXRD projectors, Mr. Siegel gained confidences material to Nexus's attempt to extract license fees from those same products.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1    Further, in the course of handling numerous other patent infringement

2    matters for SEL, Mr. Siegel ████████████████████████████████████

3    ████████████████████████████████████████ These prior

4    representations put Mr. Siegel "in a position in which confidences material to the

5    current representation would normally have been imparted." City & County of San

6    Francisco v. Cobra Solutions, Inc., 135 P.3d 20, 25 (Cal. 2006) (affirming

7    disqualification order despite the "heavy" burden of such orders and  the absence

8    of any evidence that the attorney with the conflict had capitalized on the

9    knowledge gained during his prior representation).  A protective order is thus

10   necessary to bar Mr. Siegel from directing Nexus's suit against SEL.

### 1.    Nexus's Claims Against SEL Are Substantially Related to Compound Photonics' Claims Against SEL Given the Overlapping Witnesses and Product Categories.

14   The Compound Photonics litigation that Mr. Siegel handled for SEL is

15   substantially related to Nexus's claims against SEL given the extent of Mr.

16   Siegel's involvement and the reality that both cases involve the same family of

17   Sony SXRD projectors.  All of the Morrison factors favor such a finding:

18   *Similarities between the two factual situations*.  Given the overlap in

19   accused products, there are necessarily a host of factual similarities between

20   Compound Photonics' claims against SEL and Nexus's claims against SEL.

21   For example, many of the witnesses who testified in Compound Photonics

22   are also prospective witnesses here.  Such overlap is frequently a basis for

23   disqualification under Rule 3-310(E).  E.g., Farris, 14 Cal. Rptr. 3d at 627

24   (reversing trial court and ordering disqualification, noting that likely witnesses had

25   "worked closely" with attorney who had represented the defendant).  █████████

26   ████████████████████████████████████████████████

27   ████████████████████████████████████████████████

28   ███████████████████████████████████

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1 ███████████████████████████████████

2 ████████████████████████████████████

3 ████████████████████████████████

4 ████████████████████████████████

5 ████████████████████████████████████

6 ████████████████████████████ "[I]f

the nature of the representation is such that confidences *could have* been

exchanged between the lawyer and the client, courts will conclusively presume

they *were* exchanged, and disqualification will be required." <u>E.g.</u>, <u>City Nat'l Bank</u>

<u>v. Adams</u>, 117 Cal. Rptr. 2d 125, 135 (Cal. App. 2002) (emphasis original).

Simply put, SEL need not waive attorney-client privilege ██████████

████████████████████████ Instead, the

objectively reasonable prospect that Mr. Siegel learned material information

concerning the SXRD products that Nexus has now accused of infringement is

itself sufficient to bar Mr. Siegel from assisting Nexus in pursuing that claim

against SEL. <u>Id.</u>

17 ████████████████████████████████

18 ████████████████████████████████

19 ████████████████████████████████

20 ████████████████████████████████████

21 ████████████

Now, however, those same confidences would work to SEL's detriment in

any mediation or settlement discussions so long as Mr. Siegel remains involved. ██

████████████████████████████████████

████████████████████████████████

██████████████████████ Requiring SEL to participate

under such conditions would undermine trust in "the integrity of the bar" and "the

scrupulous administration of justice." <u>State Farm</u>, 86 Cal. Rptr. 2d at 24.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

***Legal questions posed***.  The Compound Photonics and Nexus patent cases pose a host of common legal questions given that each matter targets SEL's SXRD projectors.  For example, both cases raise the issue of what types of display-related license agreements are relevant in determining "reasonable royalties" under 35 U.S.C. § 284 in the event that Compound Photonics and/or Nexus succeed in establishing that the SXRD products infringe.  The patentees' remedy theories likewise may also turn on what drives demand for the SXRD projectors.  E.g., Virnetx, Inc. v. Cisco Sys., Inc., 767 F.3d 1308 (Fed. Cir. 2014) (vacating damages award and holding that even "smallest saleable units" do not qualify as a damages base absent evidence that the patented feature drives demand for those units).

***Nature and extent of Mr. Siegel's involvement with the cases***.  The fact that Mr. Siegel spent over twenty months (from October 2011 until May 2013, when he left Sony) directing SEL's defense of Compound Photonics' claims is yet another factor illustrating the substantial relationship with Nexus for purposes of Rule 3-310(E).  So too is Mr. Siegel's current position as Acacia's Executive Vice President of Licensing & Litigation ██████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████

Having spent almost two years defending the SXRD products and ███████████████████████████████████████ Mr. Siegel cannot now leverage (or even inadvertently benefit from[3]) his experience to SEL's detriment.  Yet the specter of such leverage—unfair to SEL and inimical to public trust in the legal system—will continue so long as Mr. Siegel remains involved.

---

[3] Given that Mr. Siegel spent years coordinating the defense of products that Nexus now accuses of infringement, inadvertent disclosure is all but inevitable.  Nor should SEL have to guess (or take discovery) as to Mr. Siegel's memory or intent.  This is precisely why California law mandates <u>automatic</u> disqualification.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

### 2. Nexus's Claims Against SEL Are Also Substantially Related to Numerous Other Patent Cases That Mr. Siegel Handled For SEL Given Mr. Siegel's <u>Key Role in Formulating Infringement Defense Strategies.</u>

While highly material to Nexus's charges of infringement against SEL's SXRD products, Compound Photonics is but one example of the experience that Mr. Siegel gained over the course of his fifteen-year career defending SEL and other Sony companies accused of patent infringement. ███████████

████████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

███████████████████ Indeed, he has a "long" history advising Sony while adverse to Acacia itself.  (Steenburg Decl. Ex. 1, p. 9).

Mr. Siegel's knowledge of Sony's "tolerance for litigation, approach to patent litigation, as well as pressure points within [Sony's] chain of command" necessitate disqualification.  <u>Talon</u>, 2012 WL 601811, at *6-7 (disqualifying attorneys who "were privy to the identities of key decision makers at Toshiba" concerning the accused products and had "insight into the risk aversion (or not) of their former client").  Allowing him to remain involved would unfairly burden the defense team and force Sony to ████████████████████████

████████████████████ This would violate Mr. Siegel's continuing duty of confidentiality to SEL.  Indeed, Sony retained him to "<u>**avoid**</u> having to 'reinvent the wheel'" with each new suit.  (Suzuki Decl. ¶ 9) (emphasis added).

Indeed, California courts have deemed previous cases "substantially related" (so as to mandate disqualification) even when the attorney in question (1) had markedly <u>less</u> experience than Mr. Siegel did in defending SEL and/or (2) played a less significant role in shaping relevant litigation policies.

For instance, <u>Beltran v. Avon Products, Inc.</u>, 867 F. Supp. 2d 1068 (C.D. Cal. 2012) disqualified two law firms representing a plaintiff in a consumer class action false advertising case based on a conflict originating with an attorney who had previously represented the defendant in three earlier suits over a period of six years, including two class actions.  While none of these previous cases concerned the particular subject matter of the new matter,[4] the defendant submitted evidence indicating that the attorney had obtained confidential information relating to the defendant's "business practices" and "defense strategies against false advertising and unfair competition claims."  867 F. Supp. 2d at 1078-1081 (citing declaration from former colleague and "long-time" friend).  This information required disqualification even though more than four years had passed since the most recent of the three previous cases that the attorney had handled for the defendant.

Here, by contrast, Mr. Siegel spent over a decade handling dozens of patent infringement cases for SEL and continued doing so until last year. ███████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████

SEL's request to disqualify Mr. Siegel therefore stands on even stronger ground than the successful motion in <u>Beltran</u>.  <u>See also</u> <u>Morrison Knudsen</u>, 81 Cal. Rptr. 2d at 430 (precluding a law firm from pursuing "negligent engineering" claim against a company concerning a particular project because the law firm had represented the company's parent, and subsequently the parent's insurance underwriters, in connection with other professional negligence claims).

---

[4] The new case centered on allegations that the defendant had falsely claimed to have stopped animal testing.  By contrast, the earlier cases involved (1) products liability claims, (2) allegations that the defendant had shipped independent sales representatives with products they had not ordered, and (3) false advertising claims related to alleged benefits of defendant's products.  867 F. Supp. 2d at 1073-75.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

Mr. Siegel's situation is more analogous to that of the relevant attorney in Farris, which disqualified counsel based primarily on the attorney's prior thirteen-year relationship with the defendant and in particular his "personal role in shaping [the defendant's] practices and procedures in handling California coverage claims" such as the one implicated in the plaintiff's case.  14 Cal. Rptr. 3d at 630.  See also Brand, 21 Cal. Rptr. 3d at 387 (reversing trial court and ordering disqualification in insurance coverage dispute, noting that attorney had represented defendant and "taught the company's claims adjusters how to evaluate claims for coverage").

Here, much as in Farris, Mr. Siegel was ███████████████████
████████████████████████████████████████████  There accordingly is a "likelihood that confidences were imparted by [SEL] that could be used to adverse effect" by Nexus in the current suit.  Farris, 14 Cal. Rptr. 3d at 624 (emphasizing attorney's "pervasive" involvement in earlier matters).

**B.    California Law Requires Imputing Mr. Siegel's Conflict to His Colleagues at Acacia Along With Outside Counsel For Nexus.**

Mr. Siegel's conflict under Rule 3-310(E) must be imputed to other personnel at Acacia as well as Nexus's current outside counsel (i.e., AZA) given the opportunity that they have had to consult with Mr. Siegel concerning Nexus's patent infringement case against SEL.  As such, the attorneys at AZA must themselves be disqualified.  Advanced Messaging Techs., 913 F. Supp. 2d at 910 (disqualifying outside counsel based on contact with in-house counsel who had previously represented adverse party in related patent litigation).

California law dictates that "disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm."  Flatt, 885 P.2d at 954 (1994); see also Adams v. Aerojet-Gen. Corp., 104 Cal. Rptr. 2d 116, 122 (Cal. App. 2001) ("It is now firmly established that where the attorney is disqualified from representation due to an ethical conflict, the disqualification extends to the entire firm.").

16

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

Further, a "cadre of lawyers who are the equivalent of in-house counsel" likewise constitute a firm for purposes of the vicarious disqualification rule. Andric v. California, 55 F. Supp. 2d 1056, 1059 (C.D. Cal. 1999) (citing ABA model rules: "With respect to the law department of an organization , there is ordinarily no question that the members of the department constitute a firm . . . ."). Mr. Siegel's conflict thus extends to ███████████████████████████████████████████████████████████████████████████—and Mr. Siegel's other colleagues at Acacia who have consulted with Mr. Siegel concerning Nexus's claims against SEL.

This imputation is consistent with Mr. Siegel's status as Acacia's Executive Vice President of "Licensing & Litigation." ███████████████████████████████████████████████████████████████████████

The same principle requires imputing the in-house conflict (i.e., within Acacia) to outside counsel at AZA given the "self-evident" need for these two groups to "cooperat[e], coordinat[e], and communicat[e]." Advanced Messaging Techs., 913 F. Supp. 2d at 910. Indeed, the relationship between Acacia's in-house attorneys and AZA is no different in substance from that of two firms serving as co-counsel. Id. (citing co-counsel cases as basis for disqualifying outside counsel given contact with in-house counsel had previously represented adverse party in related patent litigation).

---

[5] Even if Mr. Siegel reversed course and attempted to construct an ethical screen, such a screen would be insufficient to avoid disqualification of AZA. E.g., Cobra Solutions, Inc., 135 P.3d at 26-30 (disqualifying entire city attorney's office based on a personal conflict of the city attorney despite his attempt to screen himself); Hutchinson v. City of Garden Grove, No. 8:07-cv-00527 (C.D. Cal. Dec. 17, 2007) (Selna, J.) ("Under California law, ethical walls are always insufficient to shield a firm that has been tainted by a conflicted attorney from imputed disqualification.").

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

Courts have recognized that there is no basis "to distinguish between a firm employing a tainted attorney and a firm serving as co-counsel with a tainted attorney." <u>Advanced Messaging Techs.</u>, 913 F. Supp. 2d at 910 (citing <u>Pound v. DeMera DeMera Cameron</u>, 36 Cal. Rptr. 3d 922 (Cal. App. 2005)).  In particular, it is reasonable to assume that two firms jointly representing a plaintiff will engage in "extensive discussions" concerning the case and "litigation strategy" even before filing.  <u>Beltran</u>, 867 F. Supp. 2d at 1084 (disqualifying two law firms from representing plaintiff in consumer class action case given one attorney's previous experience defending such cases for the defendant).

Here, by the same token, either Mr. Siegel or someone else within Acacia (to whom Mr. Siegel's conflict is imputed) naturally must have consulted with AZA concerning Nexus's claims against SEL before AZA filed the complaint.  As such, it is necessary to disqualify AZA from handling Nexus's claims against SEL.  SEL otherwise would be in the untenable position of "legitimately question[ing]" whether AZA "has the unfair advantage of knowing [SEL's] confidential information when it litigates against" SEL in the Nexus matter, involving product categories and witnesses that Mr. Siegel himself handled as recently as last year when managing SEL's defense of the Compound Photonics case.  <u>Cobra Solutions</u>, 135 P.3d at 30 (disqualifying city attorney's entire office despite lack of any evidence that city attorney or others on his staff had acted inappropriately).

## C.     SEL's Requested Relief Would Not Preclude Nexus From Maintaining the Case Using New Outside Counsel Provided <u>That an Ethical Screen is Established.</u>

Given California's strict application of the vicarious disqualification rule and refusal to credit ethical screens, Nexus would need a waiver from SEL under Rule 3-310(E) to assert its patents against SEL so long as Acacia owned Nexus and Mr. Siegel remained an Acacia executive.  SEL is prepared to provide such informed written consent under the following conditions:

- an ethical screen must be created to bar Mr. Siegel from having any input or authority with respect to Nexus's case against SEL;

- that ethical screen must also extend to Ms. Wagner along with any other Acacia personnel who have consulted with Mr. Siegel concerning Nexus's claims against SEL or other accused infringers;

- AZA must withdraw as outside counsel for Nexus against SEL; and

- any Acacia employee responsible for supervising new outside counsel on behalf of Nexus against SEL must submit a signed statement under penalty of perjury that he or she never consulted with Mr. Siegel concerning Nexus's claims against SEL.

While ethical screens are imperfect (as California law recognizes in refusing to create an exception to the imputed disqualification rule absent consent), SEL is prepared to accept this arrangement given the unusual circumstances present here.

On the one hand, SEL has no interest in seeing Mr. Siegel—a valued, long-time Sony employee who oversaw many successes, including "killing" a key Acacia patent (Steenburg Decl. Ex. 1, p. 9)—terminated by Acacia.

At the same time, it would be unfair to force SEL to defend against Nexus's claims while Mr. Siegel (or others working with him) may exploit— even if "unwittingly"—his knowledge of SEL's "settlement strategy," "financial strength," and potential pressure points.  Advanced Messaging, 913 F. Supp. 2d at 908 n.6 (explaining rationale for flexibility of the "substantial relationship test").

SEL's decision makers should not have to manage the case and prepare for key depositions while facing a credible risk that confidential information imparted to Mr. Siegel while he defended SEL could now be used to SEL's detriment.  Nor should SEL have to "second guess" its existing policies and procedures for handling patent cases and in particular defending the SXRD projector line. However, ███████████████████████████████████████, such second guessing would be inevitable so long as Mr. Siegel, Ms. Wagner, or others involved to date with Nexus remain connected to the case.

19

SEL's conditions for a waiver strike an appropriate balance between these competing concerns.  While there would be some residual risk of SEL confidences passing to counsel for Nexus via an inadvertent breach in the ethical screen, the risk appears sufficiently remote for SEL to accept under the circumstances.

SEL's willingness to accept a small residual risk (provided that Mr. Siegel and AZA are not involved in the case) underscores SEL's focus on the integrity of the judicial process rather than tactical considerations.  SEL is <u>not</u> attempting to wield ethical rules as a sword and preclude Nexus or other Acacia-controlled entities from ever suing SEL for patent infringement so long as Mr. Siegel remains Acacia's Executive Vice President of Licensing and Litigation.  Instead, SEL brings this motion to ensure that the playing field is as level as possible.

SEL recognizes that barring Mr. Siegel from directing Nexus's campaign would be contrary to ███████████████████████████████████████ ██████████████████████████████████ However, internal Acacia management issues cannot trump governing law.  Given Mr. Siegel's long history of defending SEL in patent infringement cases such as Compound Photonics, Nexus cannot pursue its case (involving the same family of accused products as in Compound Photonics) so long as Mr. Siegel remains involved and/or otherwise is able to communicate with outside counsel.

Further, given Acacia's numerous other pending litigations, Mr. Siegel has no shortage of responsibilities aside from this one particular case—one out of the "[o]ver 90 new litigations" that Nexus and other Acacia subsidiaries filed this year alone.  (Steenburg Decl. Ex. 7, p. 22).  Several weeks ago, Mr. Siegel touted how "opportunities" were "ramping up throughout 2015" and into 2016.  (<u>Id.</u>, p. 21). With these opportunities and in particular Acacia's "healthy" trial pipeline (<u>id.</u> at 12 & 62),  Mr. Siegel has an abundance of "licensing and litigation" work aside from Nexus's claims against the very same Sony SXRD products that Mr. Siegel was defending at the time that he left Sony last year.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

### D.     Numerous Other Law Firms Are Already Representing Acacia Subsidiaries and Could Replace Current Outside Counsel.

Given the numerous patent lawsuits that Acacia's many subsidiaries are currently pursuing and the many law firms representing the subsidiaries in those cases, Nexus already has a long list of firms that could replace AZA, including firms that are currently representing other Acacia subsidiaries in California cases. (Steenburg Decl. ¶¶ 13-21).  Certain of these firms have offices in Orange County. (Steenburg Decl. ¶ 14).  Other firms currently representing Acacia subsidiaries have counsel admitted to practice in California.[6]  (Steenburg Decl. ¶ 18).

## III.   CONCLUSION

Disqualifying AZA and barring Mr. Siegel from interacting with replacement counsel is required by California law and necessary to protect SEL from prejudice given Mr. Siegel's long history defending SEL in substantially similar cases and indeed working with the very same category of products that Nexus is accusing of infringement.

---

[6] Nexus was content with such an arrangement when retaining AZA, which is based in Texas but has staffed the case with an attorney admitted to practice in California.

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

1                               Respectfully submitted,

2

3    Dated: November 17, 2014     */s/ Michael N. Rader*

4                               Jeffrey T. Thomas (SBN 106409)

5                                *jthomas@gibsondunn.com*

                                Spencer Ririe (SBN 248277)

6                                *sririe @gibsondunn.com*

7                                GIBSON, DUNN & CRUTCHER LLP

                                3161 Michelson Drive

8                                Irvine, CA 92612-4412

9                                Telephone:     213-229-7000

                                Facsimile:     213-229-7520

10

11                              Michael N. Rader

                              (admitted *pro hac vice*)

12                              *mrader@wolfgreenfield.com*

13                              Charles T. Steenburg

                              (admitted *pro hac vice*)

14                              *csteenburg@wolfgreenfield.com*

15                              Stuart V. C. Duncan Smith

                              (admitted *pro hac vice*)

16                              *sduncansmith@wolfgreenfield.com*

17                              WOLF, GREENFIELD & SACKS, P.C.

                              600 Atlantic Avenue

18                              Boston, MA 02210-2206

19                              Telephone:     617-646-8000

                              Facsimile:     617-646-8646

20

21                              *Attorneys for Defendant Sony Electronics Inc.*

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY